IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Tekoa Q. Tinch, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21 C 50219 |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| Gary Caruana, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant Gary Caruana and Robert Redmond's motion to dismiss [50] is denied. Defendant Tricia Corrigan's motion for judgment on the pleadings [55] is denied.

**STATEMENT-OPINION**

Plaintiff Tekoa Tinch filed this action *pro se* when he was a pretrial detainee at Winnebago County Jail. He asserted § 1983 claims and alleged (among other things) that he received insufficient medical attention for ongoing throat pain and problems allegedly caused by his swallowing of a USB drive that he claimed remained stuck in his throat. The initial complaint was dismissed without prejudice on screening because plaintiff had misjoined separate claims. Plaintiff then filed an amended *pro se* complaint focusing on his medical care while at the Winnebago County Jail ("WCJ"). After screening the amended complaint, the court concluded that plaintiff's claims could go forward and recruited counsel to represent him. The court stated, in pertinent part:

> [P]laintiff's claim that he has had a USB drive lodged in his throat for at least five months is far-fetched. It is clear from the amended complaint that Nurse Trish doubted the plausibility of these claims. Nurse Trish was initially dismissive of plaintiff's requests for medical attention. When plaintiff persisted in requesting treatment, Nurse Trish ordered only x-rays, despite plaintiff informing her the object he swallowed was plastic and prior x-rays had been unsuccessful in revealing the cause of his discomfort. Further, plaintiff's numerous requests for medical attention, some of which he alleges were directed to Sheriff Caruana and Superintendent Redmond, were ignored.

> Nonetheless, plaintiff's allegations that he has persistent pain in his throat, coughs up blood, retches, and feels at times as though he has difficulty breathing give the court pause. Even assuming medical staff were justified in approaching plaintiff's complaints of a months-long foreign object in his throat with a healthy dose of

skepticism (a conclusion the court is not endorsing at this time), plaintiff's statements that he swallowed a USB drive coupled with complaints from which some sort of injury to his throat could be inferred, suggest medical staff may have acted unreasonably by failing to take his complaints seriously. Thus, while additional factual development may ultimately belie plaintiff's claims, the court finds plaintiff's medical care claims against defendants Trish, Caruana, and Redmond warrant investigation.

[9 at 6.] Recruited counsel filed a second amended complaint [25] and then later filed a third amended complaint [44], which is the operative complaint now before the court. It names three defendants: Gary Caruana, Sheriff of Winnebago County, sued in his official and individual capacity; Robert Redmond, superintendent of the Winnebago County Jail, sued in his official and individual capacity; and nurse Tricia Corrigan, employed by the Winnebago Jail or by the Winnebago Jail's vendors, sued in her official and individual capacity. (3AC, ¶¶ 3-5.) The complaint includes two counts. Count I is a § 1983 claim, under the Eighth and Fourteenth Amendments, against the three individual defendants. Count II is a § 1983 claim based on an alleged violation of Winnebago Jail policies.

Because the court is considering Rule 12 motions (specifically Rule 12(b)(6) and Rule 12(c)), the court is obligated to construe the allegations in plaintiff's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor"). Therefore, for the present analysis, the court will set forth below the summary of the allegations of the third amended complaint that is summarized in plaintiff's response brief:

Plaintiff has suffered from ongoing severe pain deep in his throat, particularly when swallowing, since approximately October 18, 2019. Defendants Caruana and Redmond acknowledge that Plaintiff has been unable to ease or eliminate this pain, despite seeking treatment since October 18, 2019.

Plaintiff was a pre-trial detainee held at the Metropolitan Correctional Center in Chicago, Illinois (the "MCC"), including times between September 3, 2019 through February 24, 2021. Plaintiff was subsequently held in the Livingston County Jail in Pontiac, Illinois (the "LCJ"), from approximately February 24, 2021 through April 12, 2021. Supervisor Inman at the Livingston County Jail requested transfer of the Plaintiff because "I don't have time to deal with the amount of grievances this inmate has filed." Relevant to this lawsuit, Plaintiff was held in the Winnebago County Jail in Rockford, Illinois (the "WCJ") under authority of Defendants Caruana and Redmond from approximately April 12, 2021 through May, 2022. Defendants are officials who were responsible for Plaintiff's imprisonment and medical treatment at the Winnebago County Jail.

Plaintiff sought treatment for his symptoms at both the MCC and the LCJ. After multiple diagnostic tests failed to identify the source of Plaintiff's symptoms, the physician at the LCJ referred Plaintiff to a gastrointestinal specialist for an endoscopy which would have occurred April 26, 2021. But Plaintiff was moved to the WCJ before that appointment happened.

Upon arriving at the WCJ, Plaintiff complained about pain in his throat immediately, on April 13, 2021. Rather than proceeding with the plan of treatment from the LCJ, staff at the WCJ ordered repeat tests and Plaintiff was told that he should seek a mental evaluation, that his symptoms were "all in [his] head," and that he was hallucinating. And Defendant Corrigan ordered tests that Plaintiff had already endured at the LCJ, including an April 27, 2021 chest X-ray and a July 9, 2021 esophagram that specifically did not identify reflux from Plaintiff's stomach.

Defendants Caruana and Redmond were aware of Plaintiff's medical complaints as early as June 1, 2021 when he filed this lawsuit and provided details of the lawsuit to the administrative office at the WCJ. Plaintiff further addressed a general grievance to Defendant Caruana on July 20, 2021 seeking medical care relating to pain associated with a radiotransparent USB drive in his throat. Plaintiff addressed a second general grievance to Defendant Caruana on July 30, 2021, again seeking medical care relating to pain associated with a radiotransparent USB drive in his throat and further requesting rigid endoscopy, MRI, or a CT scan to identify the source of this pain.

Further, whenever Plaintiff appealed a medical grievance, it was reviewed by Defendant Redmond or his designee. Plaintiff filed at least six appeals related to the pain in his throat and/or a foreign body lodged in his throat.

The Third Amended Complaint alleges further that Defendants ordered Plaintiff to be moved to a maximum security/restrictive housing unit in the Winnebago County Jail, where he was told his move had been authorized by Defendants as a means of keeping Plaintiff from placing additional medical requests.

Although they performed several diagnostic tests, Defendants did not attempt to treat Plaintiff's symptoms until approximately August 29, 2021, when medical staff prescribed omeprazole. Even this course of treatment ran counter to test results showing that Plaintiff did not suffer from reflux from his stomach. The omeprazole did not relieve Plaintiff's symptoms. And simultaneous with prescribing omeprazole, Plaintiff was given a prescription for Risperdal—an anti-psychotic medication. Despite Plaintiff's ongoing symptoms and repeated grievances, Defendants did not receive the endoscopy that had been ordered at the

> LCJ until February 17, 2022—nearly ten months after Plaintiff had arrived at the WCJ. The esophagogastroduodenoscopy (EGD) performed on February 17, 2022 identified physical injuries in Plaintiff's throat that had been effectively untreated since he arrived at the WCJ. Plaintiff continues to suffer.

[58 at 2-4 (internal citations to the third amended complaint are omitted).]

## ANALYSIS

Two motions are before the court—a motion to dismiss filed by defendants Caruana and Redmond and a motion for judgment on the pleadings filed by defendant Corrigan. Both sets of defendants make similar arguments, although there are a few arguments unique to each of them. The core of their argument is the factual claim that medical staff reasonably responded to plaintiff's medical problems and ordered tests and provided treatment. Therefore, they argue, based on the allegations of plaintiff's own complaint, they were indisputably not deliberately indifferent *as a matter of law*. More specifically, they state that medical staff saw plaintiff two days after arriving at WCJ and that staff saw him six times in total. He was sent to a gastroenterologist who diagnosed him with esophagitis. The gastroenterologist did not find a USB drive in plaintiff's throat. But even before plaintiff was sent to the gastroenterologist, WCJ medical staff prescribed plaintiff Omeprazole to treat any possible esophagitis. Defendants portray plaintiff's medical pain as a riddle (a "mysterious cause" is how they describe it) and suggest that there is no clear treatment for it. [63 at 3.] They complain that plaintiff has not identified any specific medical treatment that could have been provided to him to address the ongoing problem. Defendants Caruana and Redmond also argue that they were unaware of plaintiff's medical problems and were not medical professionals and were thus entitled to rely on the medical judgments of the doctors and nurses treating plaintiff. Defendant Corrigan asserts that she only met with plaintiff on one visit. Finally, defendants all argue that they are entitled to qualified immunity.

Plaintiff, not surprisingly, emphasizes different facts and draws different inferences. According to plaintiff, defendants "blinded themselves to the possibility that Plaintiff could have a serious medical need, focusing their 'care' on efforts to disprove the presence of the USB drive that Plaintiff swallowed." [61 at 1.] However, this misguided focus, according to plaintiff, meant that medical staff ignored "other diagnostic possibilities." *Id.* It took 10 months before he got the endoscopy that the Livingston County Jail has previously recommended. Meanwhile, he was given the same medical tests he had "already endured" at the Livingston County Jail, including a chest x-ray and esophagram that did not reveal anything. *Id.* at 3. He alleges that the Omeprazole did not relieve his symptoms. *Id.* He also alleges that he was placed in a maximum-security unit because he kept complaining about these problems and was told that his medical problems were "all in [his] head" and that he was hallucinating. He was given a prescription for Risperdal, an anti-psychotic medication. Plaintiff emphasizes that he filed many grievances putting all defendants on notice of these problems.

After considering and summarizing these arguments, the court has concluded that there are simply too many unresolved factual questions to justify the granting of a motion to dismiss and that, as a result, any detailed analysis would be unproductive now. It is true as defendants point out that plaintiff's medical problems were not completely ignored and that he received some medical treatment, but this fact by itself is not necessarily fatal to a deliberate indifference claim. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Given that the court previously concluded, on screening, that plaintiff has plead enough to survive a motion to dismiss, the court is reluctant to dismiss the third amended complaint now based on the idea that recruited counsel plead their client out of court by adding additional allegations in the new complaint. Defendants' arguments can be addressed again, after discovery on a motion for summary judgment, when the factual record will be more fully developed and more amenable to a definitive ruling. This conclusion is reinforced by the fact that many of the cases cited in defendants' briefs were decided on summary judgment or at a later stage in the proceedings. For all these reasons, the two motions are denied.

Date: 5/18/2023                                        ENTER:

                                                                     *Philip G. Reinhard*
                                                         United States District Court Judge

                                                                                 Electronic Notices.